UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA S.,

                      Plaintiff,

      v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**21-CV-6004F**
**(consent)**

APPEARANCES:          LAW OFFICES OF KENNETH HILLER
                                Attorneys for Plaintiff
                                KENNETH R. HILLER and
                                ANTHONY JOHN ROONEY, of Counsel
                                6000 North Bailey Avenue
                                Suite 1A
                                Amherst, New York  14226

                                TRINI E. ROSS
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York  14202
                                   and
                                KATHRYN L. SMITH
                                ASSISTANT UNITED STATES ATTORNEY, of Counsel
                                U.S. Attorney's Office – Rochester
                                100 State Street
                                Rochester, New York  14614
                                   and
                                JASON PARKERSON PECK
                                Special Assistant United States Attorney, of Counsel
                                Social Security Administration
                                Office of General Counsel
                                6401 Security Boulevard
                                Baltimore, Maryland  21235

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On October 3, 2022, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 12).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on November 16, 2021 (Dkt. 9), and by Defendant on December 17, 2021 (Dkt. 10).

**BACKGROUND**

Plaintiff Barbara S. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on February 14, 2019, for Social Security Disability Income under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits").  Plaintiff alleges she became disabled on February 23, 2016, based on a mental health breakdown on December 1, 2013, personality disorder, post-traumatic stress disorder ("PTSD"), obsessive-compulsive disorder ("OCD"), mood disorder, lymphodemia in her lower legs, anxiety/depression, insomnia, asthma, and bilateral hearing loss.  AR[2] at 12, 240, 249, 285, 288.  Plaintiff's applications initially were denied on June 4, 2019, AR at 12, 119-38, and upon reconsideration on August 30, 2019.  AR at 141-52.  On September 10, 2019, Plaintiff timely filed a request for an administrative hearing, AR at 166-67, and on April 20, 2020, a hearing was held via

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on June 25, 2021 (Dkt. 7).

telephone conference before Administrative Law Judge ("ALJ") Michael W. Devlin ("the ALJ"), located in Rochester, New York.  Appearing by telephone were Plaintiff, represented by legal counsel Jeffrey Valentine, Esq., and vocational expert Melissa Fass-Karlin ("the VE").

On September 3, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 9-29 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 234-37.  On December 7, 2020, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled, AR at 1-6, thus rendering the ALJ's Decision the Commissioner's final decision.  On January 5, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On November 16, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 9 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On December 17, 2021, Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching the Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Defendant's Memorandum").  Filed on January 28, 2022, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 11) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.  The matter is remanded for calculation of benefits.

## **FACTS**[3]

Plaintiff Barbara S. ("Plaintiff"), born November 12, 1968, was 47 years old as of her alleged disability onset date ("DOD") of February 23, 2016, and 51 years old as of September 9, 2020, the date of the ALJ's Decision. AR at 12, 239, 249, 285, 351. Plaintiff has a history of alcohol abuse but has not consumed alcohol for more than three years. AR at 44. Plaintiff is divorced and in 2014 began living by herself in an apartment in East House ("East"), a supportive housing residential program for persons recovering from substance abuse or suffering from mental illness. AR at 40, 327, 864. As an East resident, Plaintiff regularly participates in several programs offered through Connections Recovery Center ("Connections") to current and former East residents that focus on mental wellbeing, including , *inter alia*, knitting, arts and crafts, and gardening. AR at 407, 550. Plaintiff later moved into an apartment in Greece Commons which is affiliated with East, and continued to attend programs through Connections. AR at 864.

Plaintiff attended regular classes in school, graduated high school, and obtained a Bachelor's degree. AR at 47-48. Plaintiff has a driver's license but does not drive because she cannot afford a vehicle and her anxiety is sometimes too high for her to drive so for transportation, Plaintiff walks or relies on others for rides. AR at 330. Plaintiff's past relevant work ("PRW") includes accounts receiving/manager in an electronics company, administration in a retail business, a bookkeeper for a local theatre, and a retail cashier. AR at 290.

It is undisputed Plaintiff suffers from multiple mental health impairments including depressive disorder, anxiety disorder, panic disorder, borderline personality disorder,

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

and PTSD, as well as several physical impairments including hip bursitis, hearing loss, asthma, sleep apnea, laryngopharyngeal reflux disease with paralysis of left vocal cord (immobile left vocal cord), hypothyroidism, lymphedema, and morbid obesity.  In 2001, Plaintiff commenced treatment for her mental health impairments which she attributes to her father's abandoning the family when Plaintiff was a young child, and to an abusive marriage from 1994 to 1997 during which she was raped in 1995 by her now ex-husband.  AR at 407, 414, 899, 559.  In September 2019, Plaintiff broke up with a boyfriend she had been dating for 2 ½ years which increased Plaintiff's stress.  AR at 893, 899.

      Plaintiff has a history of suicidal ideation and suicide attempts.  AR at 817, 818.  From January 25, 2020 to February 11, 2020, Plaintiff was admitted to the University of Rochester Medical Center ("URMC") in a "partial hospitalization program" ("PHP") (program providing intensive, highly structured, outpatient behavioral health services to stabilize acute mental health symptoms) through URMC's comprehensive psychiatric emergency program ("CPEP"), AR at 854-954, for suicidal ideation for which Plaintiff had no specific plans, but did have the means.  AR at 858-59, 862.  Plaintiff's hospitalization was triggered by Plaintiff being unexpectedly terminated, on January 24, 2020, from a temporary data entry job in an accounts payable department which Plaintiff had anticipated might lead to a regular job.  AR at 859, 863.  The termination of Plaintiff's employment was based on Plaintiff's personal conflicts with her supervisor whom Plaintiff believed berated and was verbally abusive toward her.  AR at 818, 874.  Plaintiff also reported her coworkers were cruel to her.  AR at 820.  This was Plaintiff's fifth or sixth time in PHP for episodes of emotional dysregulation (poorly regulated

emotional response that is outside the accepted range of emotional reaction), most recently in May 2016.  AR at 890, 893, 900, 909.

On October 19, 2016, Plaintiff commenced mental health counseling with Behavioral Health Partners ("BHP"), in Rochester, New York, where she saw licensed mental health counselor Laurie Agnello, LMHC ("Counselor Agnello").  AR at 550-78, 582-592, 806-22, 851-52.  Counelor Agnello initially saw Plaintiff twice a week and later twice a month, AR at 812, and consistently reported Plaintiff regularly participated in Connections programs four days a week.  See, e.g., AR at 550, 811.  Shortly before the termination of her employment on January 24, 2020, Counselor Agnello recommended Plaintiff seek part-time employment which would allow her to continue attending her Connections programs, but Plaintiff hesitated for fear she would lose her job.  AR at 818, 820.

While treating Plaintiff, Counselor Agnello rendered several opinions regarding the effect of Plaintiff's mental health impairments on Plaintiff's ability to work including on September 19, 2018, AR at 985-88, April 6, 2019, AR at 969-71, August 1, 2019, AR at 633-65, February 27, 2020, AR at 843-49, and August 5, 2020, AR at 965-68.  On December 13, 2017, Plaintiff commenced psychotherapy with psychiatrist Gary J. Horowitz, M.D. ("Dr. Horowitz"), of Westfall Associates in Rochester, New York, AR at 392-418, 626-28, 785-92, who completed a Mood Disorder Questionnaire ("MDQ"), on March 29, 2018.  AR at 402.

In connection with her disability benefits applications, on May 2, 2019, Plaintiff underwent a consultative internal medical examination by Raquel Benchoam-Ravid, M.D. ("Dr. Benchoam-Ravid").  AR at 594-98.  Although the record indicated Plaintiff

6

also underwent a consultative psychiatric evaluation on May 5, 2019, AR at 96, no copy of the examination report is in the record. In the initial review of Plaintiff's disability benefits applications date May 31, 2019, State Agency consultative psychologist L. Blackwell, Ph.D. ("Dr. Blackwell"), conducted a psychiatric review technique ("PRT") assessment of Plaintiff's medical records and concluded Plaintiff has personality disorders, and anxiety and obsessive-compulsive disorders which pose mild to moderate limitations to Plaintiff's mental functioning. AR at 73-81. Upon reconsideration, on August 2, 2019, State Agency consultative psychologist Dr. E. Kamin, Ph.D. ("Dr. Kamin") conducted a PRT assessment based on a review of Plaintiff's medical records and concluded Plaintiff has anxiety and obsessive-compulsive disorders, as well as personality and impulse-control disorders, causing at most mild to moderate limitations in Plaintiff's mental functioning. [4] AR at 91-98.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's

---

[4] With regard to the initial review of Plaintiff's disability benefits applications, Dr. Blackwell indicated in the May 31, 2019 PRT that there is no medical opinion from any medical source that needs to be reconciled with the PRT. AR at 79. With regard to the reconsideration of Plaintiff's disability benefits applications, Dr. Kamin stated in the August 22, 2019 PRT that a consultative psychiatric evaluation was performed on May 5, 2019, which showed more restrictive findings, but that such report heavily relied on subjective reports of Plaintiff's symptoms and limitations. AR at 96. No copy of any consultative psychiatric evaluation, including the one referenced by Dr. Kamin on August 22, 2019, is in the record.

7

determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

8

a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.  Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20

C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

3. **Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI though June 30, 2020, AR at 14, and returned to work in the fall of 2019 until she was terminated in January 2020, but that Plaintiff's earnings from such work did not engage in substantial gainful activity ("SGA"), AR at 14.  The ALJ found Plaintiff suffers from the severe impairments of left hip bursitis, bilateral hearing loss, asthma, sleep apnea, laryngopharyngeal reflux disease with paralysis of left vocal cord, hypothyroidism, lymphedema, morbid obesity, persistent depressive disorder, major

depressive disorder, generalized anxiety disorder, panic disorder without agoraphobia, borderline personality disorder, and PTSD, AR at 15, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 15-16. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work limited to occasionally lifting and carrying 20 lbs.; frequently lifting and carrying 10 lbs.; standing and/or walking six hours in an eight hour day; sitting six hours in an eight hour day; occasionally pushing and pulling 20 lbs.; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ropes, ladders, or scaffolds, working at unprotected heights or near moving machinery; avoiding concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; working in an environment with moderate level of noise as defined in the Selected Characteristics of Occupations; occasionally operating a motor vehicle or other motorized equipment; understanding, remembering, and carrying out simple instructions and tasks; occasionally interacting with co-workers and supervisors; little to no contact with the general public; working in a low stress work environment (*i.e.*, no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and consistently maintaining concentration and focus for up to two-hours at a time. AR at 16-21. The ALJ further found Plaintiff is incapable of performing her PRW, *id*. at 21, but that based on Plaintiff's age on the alleged DOD of 47, which is defined as a younger individual age 18-49, which subsequently changed to the age category of approaching advanced age upon turning 50 on November 12, 2018, and given Plaintiff's RFC, education, and

ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a mail clerk, laundry laborer, and stock checker.  *Id*. at 21-22.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act through the date of the ALJ's Decision.  *Id*. at 22.

In support of her motion, Plaintiff argues that in formulating Plaintiff's RFC, the ALJ erred in evaluating the opinions of Counselor Agnello resulting in an RFC determination that is unsupported by the record.  Plaintiff's Memorandum at 11-20.  In opposition, Defendant argues the ALJ formulated an RFC that is supported by the record "as a whole."  Defendant's Memorandum at 5-11.  In reply, Plaintiff advises she is relying on the arguments and authorities set forth in Plaintiff's Memorandum.  Plaintiff's Reply at 1.  The court's thorough review of the record establishes the ALJ's formulation of Plaintiff's RFC is not supported because despite a smattering of positive reports from Plaintiff's mental health counseling, the overwhelming amount of counseling notes show Plaintiff failing to make any progress with regard to her mental health, episodes of decompensation, and that Plaintiff meets the criteria for disability based on Listings 12.04, 12.06, and 12.15.

In particular, the opinions and treatment notes of Counselor Agnello,[6] with whom Plaintiff commenced treatment on October 19, 2016, and continued to see either bi-

---

[6] The court notes that Counselor Agnello is a licensed mental health counselor.  The relevant regulations define "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law."  20 C.F.R. §§ 404.1502(d), 416.902(i).  Licensed mental health counselors are considered medical sources under that definition, and the ALJ therefore must consider those opinions consistent with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (noting the ALJ properly "discussed the medical opinion evidence offered by four medical professionals, including the opinion[ ] offered by [a licensed mental health counselor]").

weekly or bi-monthly through at least the date of the ALJ's Decision, repeatedly show not only that Plaintiff was diagnosed with depressive, anxiety, panic, and borderline personality disorders as well as PTSD, but that after initially assessing Plaintiff's anticipated progress on October 19, 2016 as "favorable," AR at 550, Plaintiff made little progress with psychotherapy because of the severity of her depression and anxiety. *See*, *e.g.*, AR at 552, 554, 555.  At times, Plaintiff made use of peer support services through the "warm line" at Affinity Place in Rochester.  AR at 560.

Plaintiff continued to struggle with feelings of sadness and loss years after the deaths in 2015 of her father and her pet cat.  *See*, *e.g.*, AR at 555 (April 5, 2017), 818 (November 19, 2019).  Cleaning and decluttering her apartment caused a 45 minute panic attack on July 19, 2017.  AR at 557.  Although Plaintiff generally enjoyed attending group programs through Connections, on June 18, 2019, Plaintiff reported having a panic attack while gardening.  AR at 810.  On April 5, 2017, Plaintiff reported increased paranoia and hallucinations which Plaintiff attributed to increased depression. AR at 555.  Examples of Plaintiff's hallucinations, none of which the ALJ considered, include fears a neighbor was breaking into her apartment, AR at 627, believing her doorbell was ringing when it was not, *id*., thinking her hip pain was caused by a baby eel insider her intestines, *id*., and calling the police from a bus to report another passenger had looked at her in a manner that led Plaintiff to believe the passenger was planning to attack her.  AR at 399.  Dr. Horowitz reported such incidents were indicative of Plaintiff's PTSD.  AR at 399.  Dr. Horowitz also reported Plaintiff was first prescribed risperidone

---

David F. v. Comm'r of Soc. Sec., No. 6:20-CV-6822-LJV, 2022 WL 10510389, at *2 (W.D.N.Y. Oct. 18, 2022)
.

13

(antipsychotic) for "skin picking" in 2014 when she was homeless and living in a homeless shelter in 2014. AR at 786.

Although the ALJ found that on February 27, 2020, after being discharged from the PHP on February 11, 2020, Plaintiff reported she intended to take classes for floral design and had completed paperwork for vocational rehabilitation through Access-VR, AR at 18 (citing AR at 851), nothing in the record shows Plaintiff ever followed through with floral design classes or vocational rehabilitation. The ALJ also points to Counselor Agnello's February 27, 2020 report that Plaintiff "was using positive talk and was following through with her chores," AR at 18 (citing AR at 851), which was inconsistent with Agnello's further report that Plaintiff "continues to show severe anxiety, is tearful through-out the day and is very hopeless about her future." AR at 18 (citing AR at 852). A fair reading of Counselor Agnello's February 27, 2020 treatment note, however, demonstrates the findings regarding Plaintiff's "positive talk" and "following through with her chores" pertain to February 27, 2020, yet Counselor Agnello's statements pertained to Plaintiff's ongoing struggle with her mental health. Significantly, despite Plaintiff's use of "positive talk" and completing some chores, Counselor Agnello specifically found that Plaintiff's psychological "symptoms have not completely returned to a baseline" as exhibited prior to Plaintiff's PHP, and Plaintiff had returned to AA meetings and was "trying to put structure in her day," and still experienced "excessive worrying and racing thoughts," and "sad and intrusive thoughts. . . ," AR at 852, none of which is inconsistent with Plaintiff's use of "positive talk" and completing some chores. Further, on November 6, 2019, Dr. Horowitz reported Plaintiff, since commencing her temporary job, was

14

"neglecting" her household chores, AR at 790, indicating Plaintiff's job prevented Plaintiff from completing her chores.

Insofar as Plaintiff briefly returned to work in September 2019, as the ALJ observed, AR at 18, Plaintiff's treatment notes from that time demonstrate Plaintiff had numerous problems interacting with her co-workers and supervisor, and that working interfere with Plaintiff's participation in her various therapeutic sessions, groups and programs, and increased Plaintiff's anxiety and depression.  Specifically, Counselor Agnello reported on November 19, 2019, that she was concerned about an increase in Plaintiff's "negative symptoms," including paranoia and ruminating thoughts, since Plaintiff commenced the full-time job, AR at 818, that Plaintiff was finding it difficult to "balance" the full-time job and her relationship with her co-workers, *id*., and Plaintiff had difficulty working with her supervisor who Plaintiff maintains berated and verbally abused her.  *Id*.  Counsellor Agnello advised Plaintiff to try working part-time so that Plaintiff could engage with her therapy and groups.  *Id*.  Counsellor Agnello also reported that during the session Plaintiff was "speaking rapidly," "appeared extremely anxious over situation at work," and engaged in psychomotor activity, specifically, "picking at her skin."  AR at 819.  On January 14, 2020, Plaintiff reported continuing to struggle with conflict at her job, believed her co-workers were making fun of her which increased Plaintiff's anxiety, broke down and cried during work, and did not know how much longer she could work at that job.  AR at 820.

Despite the ALJ's finding that Plaintiff "participat[ed] in multiple group supports and therapies, such as treatment groups, knitting, arts and crafts, and cooking classes, attending church, book clubs, AA groups, and working out at the Y," AR at 18 (citing AR

at 557), the ALJ failed to mention that most of Plaintiff's groups, including knitting, arts and crafts, cooking classes, and book clubs, are through Connections in which Plaintiff is able to participate based on her residence in supportive housing at East and Greece Commons. AR at 557. Further, there are scant references in the record to Plaintiff attending church services or events, and Plaintiff's work-outs at the Y were recommended for holistic treatment of her mental health. *Id*. It is relevant that when Plaintiff briefly returned to work full time from September 2019 until she was terminated on January 24, 2020, Plaintiff was unable to attend these programs, as Counselor Agnello reported, resulting in an increase in Plaintiff's mental health symptoms and the termination of Plaintiff's employment.

Although not specifically mentioned by ALJ, insofar as the ALJ relies on the August 2, 2019 consultative opinion of State Agency review psychologist Dr. Kamin who conducted a PRT assessment based on a review of Plaintiff's medical records and concluded Plaintiff has anxiety and obsessive-compulsive disorders, as well as personality and impulse-control disorders, causing at most mild to moderate limitations in Plaintiff's mental functioning, AR at 91-98, as noted above, *see* Discussion, *supra*, at n. 4, Dr. Kamin stated in the August 22, 2019 PRT that a consultative psychiatric evaluation was performed on May 5, 2019, which showed more restrictive findings, but that such report heavily relied on subjective reports of Plaintiff's symptoms and limitations, AR at 96, but no copy of the referenced consultative psychiatric evaluation is in the record. Nor does Dr. Kamin attempt to reconcile his findings on the PRT with the opinions of Counselor Agnello who consistently found Plaintiff unable to engage in work because of major depression, generalized anxiety disorder, bordering personality

disorder, and PTSD, which caused Plaintiff to have suicidal thoughts and ideation when under work-related stress, and to decompensate. AR at 632-35, 844-49. Significantly, the ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence); *Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a] well-supported opinion from a consultative examining physician, a non-examining state agency doctorand/or a medical expert may ... provide substantial evidence supporting an ALJ's decision.'" (quoting *Cassandra K. v. Comm'r* of Soc. Sec., 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021). However, in this case, Dr. Kamin's evaluation of Plaintiff is refuted by the consistently contrary findings of Counselor Agnello.

Moreover, although not discussed by the parties, the evidence in the record which the ALJ failed to consider, establishes Plaintiff meets the "paragraph C" criteria ("paragraph C criteria") for Plaintiff's mental health impairments at step three of the five-step sequential analysis and, thus, is disabled based on a Listings impairment.[7] In particular, Plaintiff's mental health impairments, as found by the ALJ, AR at 15, include persistent depressive disorder, major depressive disorder, generalized anxiety disorder, and PTSD. These mental impairments implicate Listings 12.04 (depressive, bipolar,

---

[7] "When reviewing a disability determination, the court's inquiry is limited to a 'review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the ... decision and whether the Commissioner applied the correct legal standard.'" *Natividad S. v. Comm'r of Soc. Sec.*, 2022 WL 2718511, at *1 (W.D.N.Y. July 13, 2022) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)).

and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). To satisfy any one of these Listings, a plaintiff must establish the criteria of paragraph A (diagnosed with the listed impairment), as well as the criteria of either paragraph B[8] or paragraph C, which are identical for each of the relevant listings. A claimant will satisfy the paragraph C criteria if,

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*see* 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App.1, §§ 12.04, 12.06, 12.15.

The regulations further explain that

> "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

---

[8] Although there is evidence in the administrative record that would support a remand for further development of the record regarding whether Plaintiff meets the paragraph B criteria, *see*, *e.g.*, AR at 844-49 (February 27, 2020 Treating Medical Source Statement on which Counselor Agnello checked boxes indicating Plaintiff is markedly impaired with regard to the paragraph B domain of understanding, remembering or applying information, and extremely impaired in the paragraph B domains of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself), because the administrative record establishes Plaintiff meets the paragraph C criteria, the court does not further discuss the paragraph B criteria.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G.2.c.

Here, not only did the ALJ fail to address the paragraph C criteria in detail, *see* AR at 15, but the ALJ completely ignored that for Plaintiff's mental health impairments, which have been medically documented for more than two years, Plaintiff has consistently attended mental health therapy (regular therapy sessions with Counselor Agnello and Dr. Horowitz), received psychosocial support (participation in at least four mental health programs through Connections), and lives and functions in a highly structured setting (including that Plaintiff's residence is part of a structured housing program), as well as evidence that upon accepting a full-time job in September 2019, Plaintiff, who was then unable to participate in her therapy program, decompensated to the point that she was no longer able to engage in housekeeping chores, had conflicts with her co-workers and supervisor resulting in Plaintiff's job termination, following which Plaintiff became suicidal for which Plaintiff was admitted into the partial hospitalization program, *see* Discussion, *supra*, at 13-16, all of which establish the paragraph C criteria are met.

In short, in the instant case, Plaintiff has sustained her burden of establishing that no reasonable factfinder could have reached the same conclusion as the ALJ based on the evidence of record.  *See Henderson v. Comm'r of Soc. Sec.*, 2019 WL 3237343, at ** 7-8 (W.D.N.Y. July 18, 2019) (sustaining the ALJ's materiality finding where the plaintiff "has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence of record." (citing *Brault*, 683 F.3d at 448)). Accordingly, the ALJ's determination that Plaintiff could perform a limited range of light work is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is GRANTED; Defendant's Motion (Dkt. 10) is DENIED; the matter is remanded to the Commissioner for calculation of benefits.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   January 25th, 2023
         Buffalo, New York